All rise. The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and his Honorable Court. The first case this morning is Advanced Magnetic v. Rome Fastener. Mr. Allen? Mr. Sarney is going first. All right, Mr. Sarney. I don't know what to say except that splitting time is never very wise or easy. We'll expect you guys to watch your time more than us. You may proceed. Yes, Your Honor. Thank you. Your Honor, the district court here found inequitable conduct and it did so without holding a trial on the issue of inequitable conduct. That is a denial of due process and we think grounds for reversing the inequitable conduct holding in and of itself. Furthermore, as part of the inequitable conduct finding, the district court clearly stated that the named inventor, Mr. Bauer, made a fraudulent claim of inventorship and that he concealed the true identity of the inventor. He stated that plainly at page 30 of the decision and that was an issue of inventorship and that too was decided without holding a trial, which was again a denial of due process. Furthermore, in deciding an issue of inventorship, there was no application of the legal standards relevant to a determined... Are you saying you have a right to a trial? You got process. He held...he had one person on the stand, didn't he? He had the named inventor on the stand during trial and that was all. The determination that he was not the inventor was based solely on his perceived lack of credibility of that witness, which he's entitled to do, but that's not sufficient to constitute clear and convincing evidence. And furthermore, there was a denial of due process because the defendants never had a chance to rebut that evidence. And moreover, the district court relied also on the deposition testimony of Mr. Reisman, who defendants had argued was the true inventor. And the district court relied heavily on that evidence and... And evidence of inequitable conduct was presented during the trial too, wasn't it, to the jury? Only an expert testimony by a patent law expert brought on by the defendants... Sounds to me like you got some process. Let's go on to other issues. Okay, Your Honor. I think that the inequitable conduct holding was further not met by clear and convincing evidence. Again, on the issue of materiality, the determination was based on a lack of inventorship. The 102-F standards applicable to determining inventorship were not applied. Even though this was not a 102-F defense, it was inequitable conduct, the same standards should be applied. How do you get by the credibility findings? The district judge hears Bauer's testimony, finds and makes specific credibility findings that he wasn't the inventor, that he couldn't tell how he'd done it, when he'd done it, or if he'd done it. How do we get by that? Well, lack of credibility does not amount to clear and convincing evidence that the named inventor is not the true inventor. There's a presumption that he is the true inventor, and a defendant is obligated to show that somebody else, by clear and convincing evidence, did in fact make the invention, conceived the invention, and reduced it to practice. And there's a whole body of law that is applied to that, to determine whether a conception was made, whether it was corroborated. There were credibility issues of the purported inventor, Mr. Reisman, which was never considered by the district court, because he improperly relied on a deposition testimony without hearing a live testimony. Furthermore, his decision makes no reference to any of those credibility issues regarding Mr. Reisman. The decision makes no reference to any assessment of the corroborating evidence, supposed corroborating evidence, as showing a conception of the actual claimed invention. Excuse me. Go ahead. Did the district court deal with the letter that Mr. Reisman sent to the prosecuting attorney, and how do you deal with it? Well, the district court didn't deal with it at all, Your Honor, because that, we submit, was the issue. It appeared in the summary judgment motion. The district court may have briefly mentioned it, but that was the issue of inequitable conduct which defendants raised, and we submit that that shows that there was no dispute at the time that the application was made, because both Mr. Reisman and Mr. Bauer stated that Mr. Bauer was the inventor. So there was no obligation, we submit, to submit that letter, and the district court never even considered that in determining the issue of inequitable conduct. Instead, he changed the issue to an issue of a false oath of inventorship, which, again, I have to go back to due process. That was not the issue that the defendants raised in their brief. It's not the issue that was argued at oral argument, and plaintiff's counsel did point that out. What about the documents that were submitted as evidence of inventorship, which were falsified and reconstructed, but no one told the court that they were reconstructed until during examination? Well, that is what it is, Your Honor. Again, that goes to the lack of credibility, and we're not disputing that. You try to submit documents which you know are reconstructed, and you don't tell the court that they're reconstructed documents? Well, I think that, well, if anything, then that goes to the misconduct, litigation misconduct, which was a separate ground for finding inequitable conduct, for finding exceptional case. We're not challenging that, or plaintiff is not challenging that, and we don't think that has any bearing on the issue of whether inequitable conduct was committed during prosecution of the application before the patent and trademark. But this is not a summary judgment determination by the court. It was a rule 50A. It was a J-moral at the end of the case in chief, right? Well, that was only on the issue of infringement, Your Honor, which we didn't feel was proper either because we felt that there was sufficient circumstantial evidence to at least put the issue before the jury. There was an admission in the patent by Mr. Ryder that his invention increased the magnetic attraction of the two halves of the magnetic snap. The jury was entitled to consider that and determine if it was an admission and weigh it against whatever evidence of non-infringement which defendants might have put forward, but they never had that chance because the judge, we feel, improperly decided that it was not an admission. And on a rule 50A motion, he's not permitted to decide the facts, and he's required to draw all inferences in plaintiff's favor, which we don't think he did. Well, what if he did? What if he was proper in his determination on the rule 50A and the J-moral in determining that all of the evidence that was submitted was in your favor and then still decided a reasonable jury couldn't come out? Well, I still think it would have been more. On your side. I'm sorry. It still would have been improper to grant the motion because it would have been for the jury to weigh whether there was an admission. And the court never even addressed the patent. It addressed the advertisement and said that's not enough and okay, but it never addressed Mr. Ryder's own patent, which he clearly stated that a rivet with a hole through it increased the magnetic attraction. And that need to at least be considered. It was evidence. And he admitted, Mr. Ryder also admitted, that his patent covered the commercial product, which was charged with infringement. Mr. Sharney, you need to yield to Mr. Allen. Oh, I'm sorry. Thank you. Mr. Allen, can you contract away inventorship? Can you contract away inventorship? Yeah, there's some kind of a deal between Reisman and Bauer. And Bauer comes forward then and says I'm the sole inventor, whereas Reisman had earlier said he was the inventor. It looked like there was some kind of a contract. Can you contract that away? I don't believe so, Your Honor. Have I got the facts right? Well, that's not part of our issue on appeal, Your Honor. Our issue is simply whether or not sanctions were properly imposed with respect to Mr. Drasowitz. We don't deal with the inventorship issue. And in terms of section 19. Now, see, that's the problem with having a divided argument, because you have to answer my question. You may proceed. Could you ask the question one more time? Yes. Can Bauer contract away inventorship? To be honest, Your Honor, I don't know the answer to that question. You may proceed with your argument. Thank you. In terms of section 1927, which is the sole issue that we're proceeding on here, two elements need to be satisfied. Number one, there's got to be a subjective bad faith finding that's particularized with a high degree of specificity in the court's findings. And there's also got to be a finding that's supported by the evidence that the attorney pursued claims that were entirely without color. We would submit that neither element was met here and that 1927 is not justified. Who submitted those documents to the court, which were eventually determined to have been fabricated? Well, Your Honor, Mr. Drasowitz proffered the evidence. And this is noted in the applese papers. But nowhere in the court's decision did the court impute that bad faith finding to Mr. Drasowitz. There's no evidence in the record that he had any idea that those documents were, as the court found, fabricated. Indeed, Mr. Bauer testified for the first time on the stand that one of the documents had been reconstructed. And there's no evidence that Mr. Drasowitz had any knowledge of that. Isn't it incumbent upon an attorney who's an officer of the court to determine whether or not the documents that he or she is submitting to the court for appropriate evidence is an appropriate document to submit for the purposes for which it is being submitted? Indeed, Your Honor. Whose duty is it to determine whether or not the document has been falsified? Well, indeed, Your Honor, the attorney certainly is an officer of the court and does have an obligation to make sure that the evidence is authentic. But if Mr. Bauer never revealed to him that he had reconstructed the document, there's certainly no way for Mr. Drasowitz to understand that. And the court even noted that. The court noted in its opinion that it would be reasonable to assign blame to Mr. Bauer for failing to advise the court that the document had been reconstructed. But there's no evidence with respect to Mr. Drasowitz. There's no evidence to show that he, in fact, did make any kind of a due diligence examination of the documents before they were submitted. He took the fact that his client gave him the documents, did not tell him that they were fabricated, but yet he made no attempt at all to determine whether or not those documents were true and correct. Well, Your Honor, the record doesn't reflect whether what he did or did not do. It's totally silent on that point. And the court's finding— It is silent on that point. And I'm asking you whether or not it's incumbent upon an attorney, as an officer of the court, to make that determination and that analysis. Well, if the attorney, I suppose, has some inkling that the document or the evidence proffered was not authentic, then yes, of course. But here there's no evidence that he had any idea that this evidence was not authentic. He proceeded as though it was, and there's no evidence to suggest that he did anything improper here or that he participated in bad faith. The court's decision and sanction related to Mr. Drasowitz is essentially that he proceeded to trial after Dr. Ratling was withdrawn as a technical expert, and that that act alone was the bad faith. And there's no other findings in the opinion to suggest otherwise. And that's not proper because it's procedurally deficient. The law is very clear that the bad faith must be particularized, and in this opinion it wasn't. Well, under 1927, right, what about 285? There wasn't an exceptional finding by the judge. But, Mr. — It was an exceptional case. Can under 285, Section 285, be allowed to assess legal fees against the attorney? I don't believe 285 can be used against the attorney, Your Honor, and the court didn't find that it could. Why not? If there's sufficient evidence and a record to show that the attorney didn't become involved in litigation? Well, here the only provision that was used to sanction Mr. Drasowitz was 1927. The court made no — I understand that. That's what the judge already found. But can 285 — is 285 broad enough to encompass litigation misconduct against the attorney if there's a finding of an exceptional case? I don't believe it is, Your Honor, and I don't believe that anyone cited cases to suggest that it is. Can you argue that your claim is colorable? Indeed, Your Honor. A colorable claim is — a claim is colorable when it has some legal and factual support considered in light of the reasonable beliefs of the individual making the claim. In this case, there was evidence submitted by the plaintiff's patent expert, Mr. Helfgott. He examined the accused device, and he testified — he walked the jury through this analysis. He testified that all of the elements that were in Claim 1 of the 773 patent were contained in the accused device. And on top of that, the appellees marked their product with a 126 patent number. And the 126 patent itself admits that the whole serves to maximize magnetic attraction. And beyond that, there was evidence that there was an — there was an advertisement in which the appellees very clearly admit that the accused device functions to increase fastening security. And so there was sufficient evidence — It sounds like you're really arguing that the court improperly awarded the J. Mullen on infringement. Well, we're not arguing that, Your Honor. The standard is different. We don't need to prove in order to avoid 1927 sanctions here that the Rule 50A motion was improperly granted, just that there was some evidence of infringement. And there are cases cited in our papers, the Perry case, for example, in which a J. Mullen was upheld, but sanctions were reversed. Thank you, Mr. Allen.  Thank you. We'll restore the full rebuttal time, but if you could give Mr. Zivin an extra three minutes, that will equalize the time between the two parties. If you need to use that time, you may, Mr. Zivin. You may proceed. I think the best thing to do in this matter, Your Honor, is to respond to some of the inquiries that you asked of the plaintiff's counsel. Where is the intent to deceive? By Mr. Bauer. Bauer may not be the inventor and still not have committed any inequitable conduct because he has no intent to deceive. Correct. Where is it? The intent to deceive, Your Honor, is twofold. One, as found by the district court, Mr. Bauer had just spent a lot of money purchasing this company. He suddenly realized that his entire investment was going to go down the drain and his investment wasn't worth anything. This is what the district court found. He then latched on to a disclosure of something that Mr. Reisman had and said, let's us file this application to prevent anyone else from competing with us and destroying our investment. However, if we file this application in the name of Reisman, it may belong to the former owners from whom we bought the company because of a consultant. You're asking us to assume an awful lot of facts here, aren't you? No, I'm not asking you to assume that because I think that was all in the writing of the testament. The fact is that Bauer doesn't disclose another inventor because he is the only inventor. Even the other party that is a purported inventor agrees to that. Now, why does Bauer have to disclose another inventor if everyone agrees he is the inventor?  The other purported inventor, Reisman, agrees to that. So, where is the intent to deceive? The intent is found in the fact that, as Your Honor had asked in a question, they had contracted away the inventorship claim. Show me the contract. Yes, it's in the record. The record has not only a contract of employment that was signed at that time. Is there a contract there that says, I am agreeing to waive my inventorship entitlement in order to allow you to proceed at the patent office? No. No, you have an employment contract of Reisman, which they then hired him. But the employment contract has attached to it the very drawings which appear in the patent application. The same drawings that Reisman had made two years earlier when he worked for a different employer. You are asking us to assume a lot here, aren't you? I think you also have to take in that connection a letter that Mr. Bauer wrote to Medina's attorney, who was Mr. Schwab at the time, saying, I've just learned about something that you had from two years ago, and it's going to destroy the investment I just made by buying your company. Do something about it. How do you get around highway equipment, which seems to be right on fours with this? No intent because the alleged co-inventor indicated he was not to be named as the inventor. That's the direct language from highway equipment. Reisman made the same agreement, so highway equipment seems on all fours. No, I think we have a different situation here, Your Honor, because Reisman has admitted against his own interest that he intended to deceive the patent office. He was part of a group that intended to deceive the patent office. He said it against his own interest. He had nothing to gain by saying that. He was appointed by Bauer to be the liaison with the patent attorney who was prosecuting the application, and therefore had a duty under Rule 56 to disclose material information. There is another interesting issue here, and that is the plaintiff appeals on the grounds that there was no inequitable conduct, but they never mention anywhere in their papers the litigation misconduct issues that the district court had found, and therefore it would seem that the judgment, insofar as the plaintiff is concerned, should be affirmed because the district court said it's sustainable both for inequitable conduct before the patent office and for litigation misconduct before me, the district judge. They never refuted that. They don't even mention it in their papers. Is that the finding of exceptional case? Yes, it is part of the finding of an exceptional case. That's what the lower court did find, wasn't it? The lower court found that there was an exceptional case on both halves, both litigation misconduct and inequitable conduct. I'll ask you the same question that I asked Mr. Allen as to whether or not Section 285 under the patent laws, if there's a finding of exceptional case, can that be used to assess legal fees for litigation misconduct? I wish I could say yes to that question, but I know there is case law which says that 285 is applicable to the client and 1927 is applicable to the attorney. Totally separate and distinct, or is there some overlap? Obviously, you have to overlap in a way because you're talking about the same kind of conduct, but under those specific statutes, I believe... So on the sanction, we're really dealing just with 1927, aren't we? The sanction is against the attorney. The sanction is against the attorney for unduly multiplying the case, making vexatious claims. And where's the bad faith? The bad faith is several fold. He goes on with the trial. I mean, that's his job as an attorney. You go on with the trial. Even if you have a bad witness, right? You go on with the trial. It was much more than that. What was more than that? Well, I'll explain it. In the summary judgment motion decision by Judge Grotti, it's in the record, decided in February of 2007, about eight months before trial, he laid out all of these issues. He pointed out that those two invoices were phony or that there were suspicions about them. That's in the record. He pointed out that there were these inventorship problems. He said there was clear and convincing evidence to him at this point that Reisman was the inventor. He put them on notice that they had a real uphill battle. He did not know at that time about the expert report because that did not come up until September of 2007, about six weeks or so before the trial began. Mr. Jaroszewicz says in his declaration that he submitted, which is in the record, that the day before the expert's deposition, he met with the expert and he learned for the first time that the expert report was just totally false. It says, these fancy pictures that are in the report do not lie. There is an increase in magnetic attraction. And the person who actually did the test had written a memo saying, I'm sorry, these pictures don't help you. In fact, there's a decrease in magnetic attraction. So he let the deposition go forward. Then when we found out that there was another person involved who had actually done this test work, we immediately asked for the documents that there were with this person. And we found out, and Mr. Jaroszewicz then went on a campaign of trying to hide the ball and stall for as long as he possibly could. He didn't produce the documents. He said he was going to fire the expert. He asked for a delay to hire a new expert. He forced us to file a motion with the court. He asked that the judge order the documents. The documents were finally produced about three or four days before trial, where we find out for the first time. But how can it be bad faith to pursue a claim after you win on summary judgment? He won on summary judgment. There was no summary judgment. And so it was a factual issue, the court perceives. How can it be bad faith to go on? Because he knew that without an expert to testify that these magnet snaps had increased magnetic attraction, there was no way that he could prove it. He's supposed to know what is going to happen on a factual issue? Well, you know that you have to prove that there is infringement. What was the evidence going to be? We've heard counsel testify that the evidence was enough to defeat summary judgment. Where is the bad faith in going forward at that point? The evidence was not enough to defeat summary judgment, Your Honor. I'm sorry. The summary judgment was defeated because they put in the expert report with these fancy pictures, which said the pictures don't lie. They show increased magnetic attraction. That was the factual issue that the judge couldn't possibly resolve on summary judgment. There was no way to refute some magnetic field analysis test that was supposedly done by this expert. But even after the expert is withdrawn, he has a great deal of circumstantial evidence. No, there was no circumstantial evidence. Including the evidence that your party says they have enhanced attraction as a selling point of their product. Your Honor, they never said that. Counsel's just said that in argument. That's not what it says. It says that the two stems which attach the halves of the magnetic fastener, which are called in the application the tubular alignment means, maximize the amount of flux that passes between the two halves of the fastener. It never says it increases the magnetic attraction. That's one place where he said it. He said there was an ad which said that there was increased magnetic attraction. It said provides greater fastening security. It doesn't say. Greater fastening security. And so in other words, there's a few words we're playing with here. It has greater fastening security, but that's not greater magnetic attraction. That is correct. But he at least has circumstantial evidence of that, right? I don't believe it. Your own party was saying we have something that fastens a lot better and has a patent on something that says that. And you're saying he doesn't have any evidence? I don't think that even rises to the question of evidence. In a patent infringement case, when you have a scientifically verifiable property, one that can be tested by doing tests of how much force it takes to move these two fastener halves. Did you offer expert testimony that there was less magnetic attraction? We had our expert from MIT who was prepared to testify, but the court granted him also we didn't put him on. But he had submitted an expert report saying that that was going to be his testimony. You also asked about, when you asked the question about what other bad faith there was, Mr. Jaroslawicz, as well as other counsel for the plaintiff, told the judge they were not aware of the reports by this third-party consultant who had been retained by their expert. The fact of the matter is they had paid for it, and so they did know that this existed. And to say that it didn't exist was a misrepresentation to the court, which neither of them ever sought to remedy or tell the court that they had misspoke or made a misrepresentation during the course of responding to a court question. The other problem in 1927 in Second Circuit law, you agree that we have to apply Second Circuit law to 1927 issues? I believe that's correct. It requires a colorless claim to be established. Was this a colorless claim? I'm not sure that the word was color. Color devoid of any grounds? I'm not sure whether the term was actually colorless claim or lacked a colorable claim. Lack of a color. They said colorless claim in their brief, and I wasn't sure that was an error. But I think in responding to Judge Rader, I believe that it was a claim which lacked any colorable authority because it was something which they could have measured, they could have had an expert who did measure it. In fact, they did have someone who claimed they had measured it who they withdrew. And in the absence of that scientific evidence, how could a jury possibly determine whether there's an increase in magnetic attraction? Does that go to bad faith or does that go to colorable claim? That part goes to colorable claim, that there was no colorable claim, which, in fact, is one of the criteria of whether there was bad faith. Your Honor has asked counsel whether Mr. Tarasowitz should have made an investigation regarding these false documents, and they said, well, he just didn't know. But if he had even read the summary judgment decision in this case, he would have known that there was a question of the credibility of those documents. And if he didn't do that, then I'm not sure what preparation he made to put a trial except to just show up. Does this case then turn on whether he had any other evidence? In other words, if we can read your advertisement that your SNAP has additional security and we can read your patent, which seems to cover the same thing and be on your products, if we can read that as evidence that you're practicing this, or at least that it's enough to defeat summary judgment as happened, do you lose on this? If there's evidence out there, it seems like there's no lack of a colorable claim, right? Well, I don't think colorable claim, Your Honor, means that you can come up with anything. If you can defeat summary judgment, have you got a colorable claim? Yes, if you can defeat summary judgment. I agree with you, Your Honor. But as I answered earlier, the reason they defeated summary judgment was by using Ratnam's expert report with these fancy color pictures. And the color doesn't show up in the appendix. Actually, these are pages from the appendix, but in color. And they show these fancy color photo micrographs or whatever they are. And the expert says these photos do not lie. But the point is even you take those away, there's other evidence. They've got evidence. So why wouldn't, if you were an attorney and you have evidence, even if you've lost some, don't you go on? You have to have enough to be able to get to the jury. You have to be able to... You're already to the jury. You're past summary judgment. You're going to trial. In fact, you went to trial. There was a jury. Don't you present your evidence? But you have to have at least some modicum of evidence. It can't just be anything. He has your own advertisements and patents. Well, I ask you to re-read that. That sounds like you've got evidence. I ask your honors to re-read those statements that he claims have increased and see if they, in fact, say that. Because they do not. They do not say increased magnetic attraction. They never said that, either in the patent or in the page from the internet that he printed out. Thank you. Thank you, Mr. Sivin. Our other two counsels have two and one minute apiece. Mr. Sarney, you have two. Thank you, your honor. Just quickly responding to counsel's statements. On the Rule 50 issue, the patent clearly states increases or maximizes the magnetic attraction. Furthermore, the tube alignment means has a hole through it. That's why it's tubular. So clearly, they were talking about the hole. The examiner read it that way. And if the examiner believed that there was sufficient to provoke an interference, there's certainly sufficient evidence to go to trial on it. Furthermore, if – well, I'm sorry. And then on the intent issue, counsel said that Mr. Reisman was acting as the agent of Mr. Bauer. But there was no assessment or evaluation or analysis of any agency relationship, application of any agency standards. So don't think that that would have been a proper way to – Can you contract away inventorship rights? No, your honor. Did that happen here? No, your honor. Mr. Bauer and Mr. Reisman apparently had a dispute. They apparently resolved that dispute, and they wrote to the patent attorney telling him that they had resolved it. There was, therefore, nothing to disclose, and there, therefore, was no intent. Well, it depends on the question as to whether or not the issue of disclosure is the way you would represent it to me, as to whether or not Mr. Reisman does not have a basis for inventorship, which would have to be at that point assigned over to Mr. Medina, who is a former owner of the company. Well, again, certainly. But that was an issue of was there an obligation to turn it over to Medina. Even if he does that, Bauer later buys that company, right? Correct. And so he would have even an additional argument for why he's still the owner of the patent rights. Oh, absolutely. And we put that in our briefs, your honor. They acquired all the assets relating to the magnetic snap business. Mr. Medina testified that to himself. So we've kind of got a double protection against any inventorship problems. So there's not much intent here, right? That's our position, your honor, yes. And the disclosure of a dispute, which was the issue, again, that was framed. The issue wasn't framed, the inequitable conduct issue, wasn't framed as whether there was a false hope of inventorship. That was not the issue. Do you have a final comment for us here, Mr. Sarni? Yes. Just again, the intent was found by the district court relying entirely on Mr. Reisman's testimony, which we submit was improper procedurally. There was no trial, no credibility assessment, no weighing of the or evaluation of the evidence. Thank you, Mr. Sarni. Mr. Allen, you have one minute. Your honor, the court asked to pose to counsel what the evidence of bad faith was in the record. And he listed off several things. The problem with his answer is that the court specifically never found those facts to be bad faith related to Mr. Gerasimus. There was an entirely, there's an entire other law firm here that handled this case from the beginning of the filing of the complaint through trial that is settled. And many of the bad faith elements that counsel cited are improperly imputed to Mr. Gerasimus, where the court did not. Certainly, counsel cannot make those fact findings and impute them to When did Mr. Gerasimus make his appearance? August 23rd, your honor. What? 07, I'm sorry. What was the period of the trial at that point? We were two months before trial. His entire involvement in this case lasted two and a half months. But he was the trial attorney. He was co-counsel with the Abelman firm, yes. And in terms of the colorable argument, the language is and the requirement of the law is entirely without color. And we don't think that, we think the claims certainly here were colorable and do not satisfy that standard. Thank you, Mr. Allen. Thank you. The court thanks all counsel for its help on this case.